## SAUTBINE v. STROUD.

(Circuit Court of Appeals, Eighth Circuit. May 4, 1925.)

No. 6793.

1. Corporations ⊚⟹121(4)—Binding contract for purchase and sale of corporate stock held sufficiently pleaded to support purchaser's action thereon.

Binding contract for purchase and sale of corporate stock, as evidenced by broker's bought and sold memorandum for notes, held sufficiently pleaded to sustain purchaser's action for seller's failure to deliver.

2. Frauds, statute of ⊚⟹115(3)—Binding contracts for purchase may be evidenced by broker's-seller's note or memorandum.

Binding contracts for purchase may be evidenced by broker's-seller's note or memorandum.

3. Corporations ⊚⟹121(4)—Facts alleged in action for breach of contract to sell corporate stock held sufficient, if established, to show breach of contract by defendant.

In action for breach of contract to sell corporate stock, allegation that, after broker had completed deal, plaintiff purchaser deposited money for payment in bank which wired to bank in which stock was to have been deposited guaranteeing payment of draft on purchaser, when accompanied by letter to corporation directing payment of unpaid dividends to purchaser, and defendant's failure to comply with contract, held to allege facts establishing breach of contract by defendant, notwithstanding condition attached to telegram guaranteeing payment of draft on purchaser.

**4. Corporations ⊙➾155(4)—Seller of corporate stock entitled to dividends declared before sale, and purchaser to those declared after sale, though before delivery.**

Seller of corporate stock is entitled to dividends declared prior to date of sale under contract, though purchaser is entitled to dividends declared after such date and before delivery.

**5. Corporations ⊙➾118—Actual tender of purchase price held unnecessary to put seller of corporate stock in default.**

Where, under terms of contract of sale, corporate stock was to be assigned and delivered to bank by seller to order of purchaser, and purchase price to be paid by purchaser on or before certain date, tender of purchase price was not necessary to put seller in default; it being sufficient, if purchaser was ready, able, and willing to pay price, and that seller was notified of such fact.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by Willis G. Sautbine against P. E. Stroud. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

C. B. Stuart, J. F. Sharp, M. K. Cruce, and J. F. Sharp, Jr., all of Oklahoma City, Okl., for plaintiff in error.

Frank Wells, D. I. Johnston, and C. L. Billings, all of Oklahoma City, Okl., for defendant in error.

Before SANBORN, Circuit Judge, and POLLOCK and SYMES, District Judges.

SANBORN, Circuit Judge. Willis G. Sautbine, of Oklahoma City, Okl., brought this action against P. E. Stroud, of Los Angeles, Cal., for $18,384 damages for the latter's alleged breach of his contract to sell and deliver to the plaintiff 38,300 shares of the stock of the Black Panther Oil & Gas Company, a corporation, for 52 cents per share, when it was worth $1 a share, or $38,-300. The defendant demurred to the plaintiff's amended complaint, on the ground that it did not state facts sufficient to constitute a cause of action, and claimed that it did not allege facts constituting a contract of sale, or a breach by the defendant of such a contract. The court below sustained the demurrer, the plaintiff elected to stand on his amended complaint, the court rendered judgment against him, and he sued out the writ of error in this case. He complains of the ruling sustaining the demurrer, and these two questions are presented: (1) Did the complaint state facts sufficient to constitute a contract of sale between the plaintiff and

the defendant? and (2) if so, did it state facts sufficient to evidence a breach of that contract by the defendant?

[1] In that complaint the plaintiff clearly alleged that Ben Longfellow was a broker engaged in his business as such at Oklahoma City; that on May 31, 1923, the defendant at Los Angeles telegraphed Longfellow at Oklahoma City that he would offer 38,300 shares of Black Panther stock at 50 cents net to him; if the offer was accepted to send draft to Security Trust & Savings Bank, Los Angeles, and he would deposit stock assigned; that Longfellow answered on June 1, 1923, that he thought he had this stock sold; that he would assume delivery of funds covering purchase to Security Trust & Savings Bank of Los Angeles by June 5th; that he was selling at 52 cents, and wanted the defendant to wire him that he would protect him for 2 cents, or $766, which was his commission; that on June 2, 1923, Stroud telegraphed Longfellow that he would deposit stock with the Security Trust & Savings Bank of Los Angeles; that he would remit Longfellow's commission when the deal was closed, and asked him to wire if he was sending money; that thereupon Longfellow, as agent and broker for the defendant Stroud, made out and delivered to the plaintiff Sautbine, his broker's-seller's note, which was thereupon accepted and agreed to by Sautbine, and also by the defendant Stroud, and was in these words:

"Oklahoma City, Okl., June 2, 1923.
"Mr. P. E. Stroud, c/o Victoria Hotel, Los Angeles, Cal.:
"Sold for you the following securities:
38,300 thirty-eight thousand three hundred shares of Black Panther Oil Company stock, to net you 50c per share, or total................$19,150.00

"We sold stock at 52c. the 2c. per share representing our commission, and total of $19,916.00 is being sent to your bank; upon receipt of $19,916.00, you are to remit to us by draft $766.00 as per your wire confirming.     Ben A. Longfellow & Co.,
"Per [Signed] Ben A. Longfellow.
"Accepted:
"[Signed]     Willis G. Sautbine."

[2] The averments of the complaint, which have now been stated, seem clearly to allege facts sufficient to prove a valid contract of sale of the 38,300 shares of stock, binding upon both the plaintiff and the defendant. They establish the authority of the broker to offer for sale and to make a contract of sale by the defendant of his 38,300

shares of stock, for $19,150 net to him, to be paid to him, and his stock to be duly assigned and delivered to the plaintiff at the Security Trust & Savings Bank, Los Angeles, Cal., by June 5, 1923, and that such a contract of sale was made by and between the parties on June 2, 1923, is evidenced by the broker's-seller's note, or memorandum. The validity and conclusiveness of contracts evidenced by such brokers' slips or notes have been repeatedly declared by this court. Gettys v. Newburger, 272 F. 209, 212, 213, 215; Thorn v. Browne, 257 F. 519, 521, 522, 523, 524, 168 C. C. A. 469; Kempner v. Goddard Grocer Co. (8th C. C. A., opinion filed April 30, 1925) 5 F.(2d) 807.

Counsel for Mr. Stroud suggest that the complaint shows that the minds of Mr. Sautbine and Mr. Stroud never met upon the terms of this contract of June 2, 1923, because the plaintiff alleged in his pleading that on June 4, 1923, he caused the Security National Bank of Oklahoma City to telegraph to the Security Trust & Savings Bank of Los Angeles Exhibit F, which reads as follows: "We will pay draft P. E. Stroud on Willis G. Sautbine $19,150.00 providing that is attached thereto certificates of stock of Black Panther Oil & Gas Co., of Okla. City properly assigned covering 38,300 shares their stock also to be attached letter from P. E. Stroud dated prior to June sixth addressed to Black Panther Oil & Gas Co. authorizing payment of any unpaid dividends to be paid to Will G. Sautbine. Telegraph us what has been done"—and on June 5, 1923, Exhibit G, which reads in this way: "Supplementing our telegram to you yesterday notify and pay to P. E. Stroud $19,-150.00 on delivery to you stock and documents mentioned our wire June 4th. We are remitting by wire." But the contract of sale was concluded on June 2, 1923, and neither of the parties to it could change, reject, or rescind it, or any part of it, after its making, without the consent of the other party thereto, and our conclusion is that the contract of sale was well pleaded.

[3] The second question is: Did the plaintiff plead facts sufficient, if proved, to establish a breach of the contract by the defendant? Counsel for the defendant contend that he did not do so, because the plaintiff pleaded that he caused the Security National Bank of Oklahoma City to send to the Los Angeles bank Exhibits F and G, and that these telegrams conditioned the plaintiff's readiness and willingness to pay over the purchase price upon the defendant's delivery of the stock to him at that bank on

June 5, 1923, by the requirement that the assignment of the stock should be accompanied by a letter from Mr. Stroud to the Black Panther Company, dated prior to June 6, 1923, authorizing that company to pay any unpaid dividends on the stock to Mr. Sautbine, and thereby disclosed the fact that the plaintiff was not ready and willing to pay the purchase price of the stock to the defendant at the Los Angeles bank on June 5, 1923. There are, however, several reasons why this contention has not proved persuasive.

[4] The request in Exhibits F and G for a letter to the Black Panther Company to pay any unpaid dividends to the plaintiff must be read and construed in the light of the circumstances under which it was made and of the indisputable legal rights of the parties. The contract of sale was made and completed on June 2, 1923. It is the indisputable law that, if there were any unpaid dividends on June 5, 1923, those dividends that had been declared prior to the making of the contract, if any, would remain the property of the seller after the performance of the agreement, and those declared by the Black Panther Company after the making of the contract on June 2, 1923, would become the property of the purchaser, Mr. Sautbine. The latter, upon payment of the purchase price, or upon deposit of it with the Los Angeles bank on June 5, 1923, with instructions to pay it over to the defendant on delivery of the stock duly assigned would become the owner and entitled to receive any unpaid dividends on it declared after the making of the contract. Black v. Homersham, L. R. 4 Exch. Div. 24, 39 L. T. N. S. 671, 48 L. J. Exch. N. S. 79, 45 L. R. A. 395, note; Currie v. White, 45 N. Y. 822, 823, 830.

The amended complaint contains no averment, and there is no evidence or information in the record, that there were any unpaid dividends, and, if there were, the legal presumption is that they were declared subsequent to the making of the contract, and before the 6th day of June, and that the plaintiff was entitled to them upon the payment of the purchase price. This court cannot presume that the plaintiff was demanding that to which he had no claim or right, when his request may have been applicable to that to which he was lawfully entitled. Moreover, if there were no unpaid dividends, except those declared after the making of the contract, or if there were no unpaid dividends at all, the defendant's compliance with the request of the plaintiff would have de-

prived him of no property that belonged to him, and would have inflicted upon him no loss. In the transfer of stock of corporations from seller to purchaser, it is an accommodation to the purchaser that burdens little, if any, the seller to receive from him a note or letter to the corporation directing it to pay to the purchaser dividends to which the latter becomes legally entitled by the sale, and in the absence of further information the proper and true construction of the request for the letter in Exhibits F and G must be construed to have been to ask for that accommodation. And if the readiness and willingness of the plaintiff to pay the purchase price rested upon this request alone, we should hesitate long to hold that it constituted a breach of the contract, or a lack of readiness or willingness to perform, on June 5, 1923, especially in view of the fact that the complaint shows that on June 6, 1923, the defendant telegraphed the broker, Longfellow, as follows: "Presented stock to Security Trust & Savings Bank 7th and Spring June 5 payment refused on guarantee wired by Security National Bank Oklahoma City. Now making other arrangements"—clearly indicating that it was not on account of the request for the letter about the dividends that the defendant failed to assign and deliver the stock to the plaintiff.

[5] The readiness and willingness of the plaintiff to pay the purchase price at the Los Angeles bank on June 5, 1923, does not, however, rest upon these requests and telegrams alone. The plaintiff also alleged in his amended complaint that on June 4, 1923, Longfellow, the broker, telegraphed the defendant that his purchaser, the plaintiff, had had the Security National Bank of Oklahoma City wire the Los Angeles bank guaranteeing the payment of his draft on the plaintiff; that the plaintiff was on June 5, 1923, ready, willing, and able to perform the terms of the contract; that the defendant was duly advised of that fact; that on that day the plaintiff caused the amount required to pay for the stock to be placed in cash in the Los Angeles bank designated by the defendant, to be paid over to the defendant upon delivery of the stock purchased, and advised the defendant of that fact; but that the latter refused to transfer the stock and repudiated his contract for its sale. Under the terms of the contract the stock was required to be assigned and delivered by the defendant to the order of the plaintiff, and the purchase price was to be paid by the plaintiff at the Los Angeles bank at the same time on or before June 5, 1923. Under these circumstanc-

es no tender of the purchase price was necessary to put the defendant in default. It was sufficient that the plaintiff was able, ready, and willing to pay the purchase price at the Los Angeles bank on June 5, 1923, and that the defendant was notified of that fact. 35 Cyc. 624; Porter v. Rose, 12 Johns. (N. Y.) 208, 7 Am. Dec. 306; Currie v. White, 45 N. Y. 822, 830.

Our conclusion is that the amended complaint states facts sufficient, if proved, to establish the readiness and willingness of the plaintiff on June 5, 1923, to pay to the defendant at the Los Angeles bank the purchase price of this stock, the defendant's knowledge of that fact, and his failure and refusal to assign or deliver the stock or to accept payment therefor. The judgment below must therefore be reversed, and the case must be remanded to the court below, with directions to permit the defendant to answer.