## STROUD v. SAUTBINE et al.

Circuit Court of Appeals, Eighth Circuit.
April 15, 1927.

No. 7615.

**1. Corporations ⊜⇒118—Under contract for purchase of stock, stating no date for payment, time held not of essence, and payment within reasonable time sufficient (Civ. Code Cal. § 1492; Comp. St. Okl. 1921, § 5061).**

Where contract for purchase and sale of corporate stock, evidenced by brokers' seller's note executed in Oklahoma, recited that purchase price was to be paid in Los Angeles bank, but stated no date for payment nor expressly made time of essence, held, that time was not of the essence of the contract, and buyer performed by depositing price in Los Angeles bank within reasonable time after date of contract, regardless of whether contract was California contract, governed by Civ. Code Cal. § 1492, or Oklahoma contract, governed by Comp. St. Okl. 1921, § 5061.

**2. Brokers ⊜⇒92—Broker's contract, within terms of his authority, binds principal.**

Contract by broker, acting within terms of his authority, binds principal for whom contract is made.

**3. Brokers ⊜⇒100—Buyer of stock through seller's brokers held not bound by brokers' telegram to seller that money would be in bank on certain date, agency having terminated.**

Buyer of corporate stock through brokers, who were seller's agents under contract evidenced by brokers' seller's note, requiring payment to be made at seller's bank within reasonable time, held not bound by brokers' telegram to seller, after execution of agreement, that deal was closed and that money would reach seller's bank on certain date, the agency having terminated.

**4. Corporations ⊜⇒116—Brokers' telegram that they assumed deposit of price in seller's bank by certain date would be satisfactory, though assented to by seller, held not to make time of essence.**

Where, prior to execution of contract to purchase corporate stock, evidenced by brokers' seller's note, brokers telegraphed seller that they thought they had stock sold and would "assume" that deposit of purchase price in seller's bank by certain date would be satisfactory, held that, even if seller assented to brokers' assumption by failing to deny it, such assent did not constitute an agreement that time should be of the essence of the contract.

**5. Corporations ⊜⇒118—Under contract to purchase stock, executed in Oklahoma, requiring payment in California within reasonable time, payment four days later held valid.**

Where contract for sale and purchase of corporate stock, executed in Oklahoma June 2, 1923, required purchase price to be deposited in California bank for seller within reasonable time, held, that deposit of money in such bank on June 6 was made within reasonable time; Sunday, being dies non juridicus, having immediately followed day of making of contract.

**6. Appeal and error** ☞1099(6)—**Opinion on former appeal, addressed solely to sufficiency of petition, held not to establish time to be of essence as law of case.**

Where opinion of appellate court on former review was addressed only to sufficiency of petition, which did not allege time for performance of contract for purchase of stock to be of the essence of the contract, but expressly alleged that the only requirement made was immediate acceptance by valid contract, and that no requirement as to time of payment was contained therein, opinion did not establish that time was of the essence of the contract as law of case.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by Willis G. Sautbine and others against P. E. Stroud. Judgment for plaintiffs, and defendant brings error. Affirmed.

Frank Wells, D. I. Johnston, George G. Barnes, and Wallace C. Lee, all of Oklahoma City, Okl., for plaintiff in error.

J. F. Sharp, of Oklahoma City, Okl. (J. F. Sharp, Jr., and M. K. Cruce, both of Oklahoma City, Okl., on the brief), for defendants in error.

Before BOOTH, Circuit Judge, and FARIS and DAVIS, District Judges.

FARIS, District Judge. Sautbine sued Stroud for damages for breach of a contract to sell certain corporate stock. This contract was evidenced by certain telegrams which passed between the brokers who made the sale and Stroud, the alleged seller of the stock, together with the brokers' seller's note, signed by the brokers and by Sautbine the buyer.

The case was here before on a writ of error, brought by Sautbine, to reverse a ruling of the District Court, sustaining a demurrer to his petition. This court on the former writ of error held the petition sufficient, reversed the judgment nisi, and remanded the case for a trial on the merits. Sautbine v. Stroud (C. C. A.) 5 F.(2d) 809. Upon a retrial a jury was waived, and the case was tried before the court, and resulted in a judgment for Sautbine in the sum of $11,107. Stroud here seeks by the instant writ of error to reverse this judgment. For brevity and clarity we shall refer to plaintiff in error as Stroud, or the seller, and to defendants in error as Sautbine, or the buyer.

The trial court made separate findings of fact and conclusions of law, which were filed and made a part of the judgment roll. The evidence is not here, and so the facts must be taken from the court's findings thereon. The several telegrams and the brokers'

seller's note are made parts of the court's findings of facts by reference, though only one of these documents is set out therein, in hæc verba.

Counsel for Stroud urge but two matters as grounds for reversal: (a) That by the terms of the contract time was so far of the essence of the contract that Sautbine was bound to have the money, to pay for the stock, in the bank of Los Angeles on the 5th day of June, 1923; and (b) that this court so held on a former appeal, which holding they contend is now the law of the case. So counsel for Stroud urge that the conclusion of law made by the trial court that time (as of June 5, 1923) was not of the essence of the contract is erroneous, for that such law of the case concluded the court below upon this issue.

The telegrams and document which went to eke out the brokers' authority and to make up the contract sued on (omitting addresses, signatures, and other merely formal parts), are as follows:

On May 31, 1923, Stroud, in Los Angeles, Cal., wired the brokers, Longfellow & Co., at Oklahoma City, Okl., thus: "Will offer thirty thousand eight hundred shares Black Panther at fifty cents net to me for immediate acceptance. If accepted send draft to Security Trust and Savings Bank, Los Angeles, Guaranty Branch, 7th and Spring St., and I will deposit stock assigned."

Thereafter on the same day the brokers wired Stroud: "Can sell all your stock for you net you fifty cents but stock must be shipped draft attached American National Bank here. Wire answer immediately."

On June 1, 1923, the brokers wired Stroud: "Think have your stock sold unless you wire me instantly to contrary will assume delivery of funds covering purchase to Security Trust and Savings Bank, Los Angeles Guaranty Branch Seventh and Spring St., by Tuesday June fifth will be satisfactory. I am selling at fifty-two cents and want you to wire me that you will protect me for two cents per share or seven hundred sixty-six dollars which is our commission will want you to mail me draft this amount upon delivery of funds at your bank."

On June 2, 1923, Stroud wired the brokers thus: "Will deposit stock with Security Trust and Savings Bank Guaranty Branch, 7th and Spring and will remit your commission when deal is closed. Wire if you are sending money."

Thereupon, and on the same day, the brokers wired Stroud: "Closed the deal money will reach your bank Tuesday."

On this same day a brokers' seller's note

was executed by Sautbine and the brokers, which reads thus:

"Oklahoma City, Okla., June 2, 1923.

"Mr. P. E. Stroud, % Victoria Hotel, Los Angeles, Cal.: Sold for you the following securities: 38,300 thirty-eight thousand three hundred shares of Black Panther Oil Company stock to net you 50 per share or total, $19,150.00. We sold stock at 52c., the 2c. per share, representing our commission, and total of $19,916 is being sent your bank; upon receipt of $19,916 you are to remit to us by draft $766 as per your wire confirming.

"Ben Longfellow & Co.,

"Per [Signed]  Ben A. Longfellow.

"Accepted: [Signed]  Willis G. Sautbine."

On the 5th day of June, 1923, the Security National Bank wired the Security Trust & Savings Bank of Los Angeles, this: "Supplementing our telegram to you yesterday notify and pay P. E. Stroud $19,150, on delivery to you stock and documents mentioned our wire June 4th. We are remitting by wire." On the same day—that is, on June 5th—the brokers wired Stroud that "in compliance with your accepted offer money is to-day being placed with Security Trust & Savings Bank Guaranty Branch, Seventh and Spring Street in purchase Black Panther stock."

The wire of June 4, 1923, from the Oklahoma bank to the Los Angeles bank, agreeing to pay for this stock, but imposing, as defendant seems to have contended, certain conditions not contemplated by the parties, is omitted, because those alleged conditions are fully dealt with in the former opinion of this court, wherein it was ruled that they were not in law additional conditions. Sautbine v. Stroud, 5 F.(2d) 809.

On June 6, 1923, Stroud wired the brokers that he had presented stock to the designated Los Angeles bank, but it had refused to pay the money on the guaranty of the Oklahoma bank, and he was making other arrangements. On the 4th day of June, 1923, a dividend of 50 per cent. had been declared on this stock.

The trial court found, as did this court when the case was here before (Sautbine v. Stroud, supra, loc. cit. 811), that a valid contract was concluded between the parties on June 2, 1923. The trial court also found as a fact that payment was made in a reasonable time after June 2, 1923, and it concluded: (a) That time was not of the essence of the contract; and (b) since the money was on hand in the Los Angeles bank on June 6, 1923, this was a sufficient per-

formance on Sautbine's part to permit recovery by him.

As already said, plaintiff in error contends that this court on a former trial held that time, to wit, June 5, 1923, was of the essence of the contract, and the question was therefore foreclosed by such finding, and so, in the light of the fact that the trial court found that the money was not in the Los Angeles bank till June 6, 1923, its judgment, being in conflict with the law of the case, cannot stand.

[1] We are constrained to agree with the conclusion of law, reached by the trial court, that upon the conceded documentary facts time as of June 5, 1923, was not of the essence of the contract. This is so, we think, for two reasons: First, Sautbine, the proposed buyer, never agreed to have the purchase money in the bank at Los Angeles on June 5; and, second, neither the law of the place of contract nor the law of the place of performance required such deposit under the terms of the contract. The only actual point of contractual contact between the buyer, Sautbine, and the seller, Stroud, occurred in the brokers' seller's note of date June 2, 1923. Therein Stroud, through his brokers, agreed to sell, and Sautbine personally and in writing agreed to buy, the stock in question at a price fixed in that document, and to make payment of the purchase price at the Los Angeles bank, but on no certain or fixed day. Sautbine was bound, of course, to compliance, by having the money in the bank at Los Angeles within a reasonable time after June 2, 1925.

[2] It is well settled that, if a broker makes a contract for his principal, the latter is bound (Gettys v. Newburger [C. C. A.] 272 F. 209); certainly when the broker acts within the terms of his authority (9 C. J. 668). The evidence is not before us. The trial court found that the brokers were the agents of Stroud, and not the agents of Sautbine. Since the evidence is not here, we have nothing against which to check this solemn finding, which fairly connotes an agency within the terms of the authorization.

[3, 4] After the execution of the brokers' seller's note, the brokers wired Stroud that the deal was closed, and that the money would reach Stroud's bank on June 5th. Sautbine was not bound by this promise, for the reason, if for no other, that the contract of sale had then been closed, and the brokers, not being his agents, had no power to speak for him or bind him. Prior to the execution of the brokers' seller's note,

the brokers wired Stroud, in substance, that they thought they had the stock sold, and would "assume" that deposit of the purchase price in Stroud's bank by June 5th would be satisfactory. While no categorical assent was made to this assumption, nor was it directly referred to by Stroud, it may arguendo be conceded that he assented to it. So conceding, did it amount to an agreement that time should be of the essence of the contract? We think not.

It makes no difference, as already indicated, whether the contract is to be construed as governed by the Oklahoma law or the California law, and we will not take up time or space to rule the point, because both states, it seems, have statutes which provide the conditions under which time shall be held to be of the essence of a contract. Section 1492, Civil Code Cal. 1923. Construing this statute the Supreme Court of California said in the case of Bennett v. Hyde, 92 Cal. 134, 28 P. loc. cit. 105, this:

."At law, time has always been considered of the essence of the contract. But equity, unwilling to permit a forfeiture if it can be avoided, has held otherwise, except when the parties have so expressed their intent, or it is clearly to be inferred. This rule, we think, it was intended to adopt in the Code provision, limiting it, however, where the delay is capable of exact compensation, by requiring that the intent shall expressly appear in the contract."

Similarly, the statute of Oklahoma provides thus: "Time is never considered as of the essence of a contract, unless by its terms expressly so provided." Section 5061, Comp. St. of 1921. Construing this section, the Supreme Court of Oklahoma in the case of Snyder v. Stribling, 18 Okl. 168, 204, 89 P. loc. cit. 233, said this:

"We must assume that the Legislature, in adopting our statute on this subject, had in contemplation the existing law as it was administered both in courts of law and in courts of equity, and that they intended to abolish the common-law rule and to adopt the equity rule in a modified form. In equity, according to the established doctrine of the courts, time was held to be of the essence of the contract only in cases of direct stipulation, or of necessary implication, and Lord Romilly said: 'The cases of direct stipulation are where the parties to the contract introduce a clause expressly stating that time is to be of the essence of the contract.' Our statute adopts this one branch of the equitable doctrine as the law of this territory, and declares that 'time is never considered as of the essence of a contract unless by its terms expressly so provided.' No room is left for cases of necessary implication. The extreme difficulty of applying the equitable rule, and of determining what class of contracts make time as of the essence of the contract by necessity or implication, has given the courts much perplexity, and has furnished a fruitful field for litigation. Under our statutory rule all doubt is banished, and, if the contracting parties desire to make time as of the essence of the contract, they must so expressly stipulate in the contract; otherwise, time will not be so considered."

[5] In the case at bar there is no provision in the brokers' seller's note which makes time of payment of the purchase price as of the essence of the contract; nor is there any such agreement to be found in the telegrams sent by the brokers to Stroud before the deal was closed, even if we concede, for the sake of the argument, that all of these antecedent telegrams considered together constituted the written authority of the brokers to act as agents for the seller, and that the buyer is fully bound thereby. We have already seen that Sautbine was not bound by the telegram, sent subsequent to the close of the deal, wherein the brokers promised that the money would be in the Los Angeles bank on Tuesday, June 5, 1923. We conclude, therefore, as did the trial court, that time was not of the essence and that Sautbine was bound to have the money at the Los Angeles bank within a reasonable time only, after June 2, 1923, and, the situation and distance regarded, June 6, 1923, was a reasonable time; a Sunday, being dies non juridicus, having immediately followed the day of the making of the contract. In passing, it fairly appears that, according to the customary dealing among bankers, authority to pay was wired by the Oklahoma bank to the Los Angeles bank on the 5th day of June, 1923; but the Los Angeles bank, deeming the condition touching the dividends on this stock to affect the guaranty, declined to make payment upon that form of guaranty. The telegram of Stroud by the broadest inference indicates this situation.

[6] With the further contention of Stroud, that the question of whether time was not of the essence of the contract was foreclosed by the former opinion of this court, and is now the law of the case, we are also constrained to disagree. The case was here before on a writ of error by Sautbine, bottomed solely upon the fact that the trial court had sustained the demurrer of Stroud to the sufficiency of the petition. This pe-

tition, construed by the court on the former appeal, did not allege that time was of the essence of the contract, but, on the contrary, expressly averred upon this point that "the only requirement made was immediate acceptance by valid contract, and no requirement as to time of payment was contained therein."

Moreover, this court, in approaching a discussion of the former case, propounded as raised upon the appeal these two questions only: "Did the complaint state facts sufficient to constitute a contract of sale between the plaintiff and the defendant?" and "If so, did it state facts sufficient to evidence a breach of the contract by the defendant?" To the two above questions, therefore, the discussion in the former opinion obviously was limited. Cohens v. Virginia, 6 Wheat. loc. cit. 399, 5 L. Ed. 257. The court held that both of the questions propounded must be answered in the affirmative, and this, too, notwithstanding the allegation contained in the petition that the contract contained no requirement as to the time of payment. In effect, then, this court ruled that the petition was good, even though no promise to pay the purchase price at any specific date was contained therein. The most that can be said, then, as to the question whether time was of the essence of the contract, is that this question was left at large in the case, to be determined as a fact upon the trial on the merits.

While conceding the existence of the rule for which Stroud contends (3 Cyc. 395), we conclude that the facts present do not warrant its application. The point was not before the court on the former appeal, and therefore it did not rule it. Cohens v. Virginia, 6 Wheat. loc. cit. 399, 5 L. Ed. 257.

We conclude that no error meet for reversal occurred below, that the judgment was for the right party, and that it should be, with costs to defendants in error, in all things affirmed.